**UNITED STATES of America, Appellee**

v.

**Lionel ORTIZ, Appellant.**

**No. 92–3144.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1996.

Decided April 30, 1996.

─────────

Mona Asiner, appointed by the court, Alexandria, VA, argued the cause and filed the briefs for appellant.

Thomas A. DiBiase, Assistant United States Attorney argued the cause for appellee with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief. Elizabeth Trosman, Washington, DC, entered an appearance.

Before: SILBERMAN, BUCKLEY and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant Lionel Ortiz appeals his convictions by a jury of several drug distribution offenses on the grounds that in two instances the district court erred by failing to act *sua sponte*, and in a third instance, abused its discretion. Specifically, Ortiz contends that the district court erred by failing to conduct a colloquy with him to determine whether he had waived his right to testify and plainly erred by failing to inquire whether a potential defense witness could assert a blanket Fifth Amendment privilege. Ortiz also contends that the district court abused its discretion by denying a mistrial when the prosecutor commented in closing argument on Ortiz' failure to speak at trial. We affirm.

## I.

Ortiz was indicted for conspiracy to distribute cocaine base,[1] attempted distribution of cocaine base,[2] unlawful use of a communication facility,[3] possession with intent to distribute cocaine base,[4] and distribution of cocaine base.[5] According to the government's evidence, Special Agent Robert Valentine of the Drug Enforcement Administration first met Ortiz on April 9, 1991. Earlier that day, Valentine had arranged with Florentino Mendez to purchase 125 grams of crack cocaine for $3,200, and they met that evening at a restaurant to consummate the transaction. Mendez introduced Ortiz to Valentine as "Carlos." Ortiz told Valentine that the drugs would be there in 30 minutes and would cost "33," which Valentine agreed to pay. When the drugs did not arrive, Ortiz made several telephone calls. When Valentine decided to leave, Ortiz wrote down his pager number for Valentine to contact him for future transactions.

Ortiz paged Valentine the next day, April 10th. Valentine taped this telephone conversation in which he and Ortiz arranged to meet the following day. On April 11th, Ortiz and Valentine went to a restaurant restroom where Ortiz gave Valentine a plastic bag of crack cocaine in exchange for $3,200.

A week later, on April 18th, Valentine arranged with Mendez to buy a quarter kilogram of cocaine base for $6,000. That evening, Valentine and undercover agent Barbara Rist met Mendez and Ortiz at a restaurant. In the restroom, Ortiz gave Valentine a plastic bag of white substance. Upon rejoining Mendez and Rist, Rist gave Ortiz the money. Ortiz counted it, reported that it was "good" and left to pay "the guy"; he returned and Valentine gave him $1,000 that was short. Ortiz left again, and later reported that "everything was fine."

Thereafter, Valentine and Mendez arranged a fourth meeting. On April 25, Mendez met Valentine at a restaurant, advising that Ortiz "was in the area" with a kilogram of crack that they would sell for $26,000. When Ortiz arrived, after counting the proffered money, he went with Valentine to the restroom. But when Ortiz insisted on getting the money before turning over a bag

---

**1.** 21 U.S.C. § 846 (1988).

**2.** *Id.*

**3.** 21 U.S.C. § 843(b) (1988).

**4.** 21 U.S.C. § 841(a) & (b)(1)(A)(iii) (1988).

**5.** *Id.*

containing about one kilogram of crack, they returned to the restaurant and Valentine gave a prearranged signal to other DEA agents to arrest Ortiz and Mendez. A search of Ortiz turned up 125 grams of crack and a pager.

The government also presented testimony from DEA agents who conducted surveillance of the four meetings and identified Ortiz as the person making the drug sales as well as photographs of the scenes and portions of the meetings, a tape recording of Valentine's April 10th telephone conversation with Ortiz, and the drugs.

Ortiz presented testimony from his priest, his employer, his wife, and family friends to show that he was working, as his April work time cards showed, on the dates of the drug transactions. In addition, he presented two expert witnesses. A foreign language interpreter opined, based on comparing Ortiz' English proficiency with that of the speaker on the tape recording of the April 10th tape conversation, that "it is probably not Mr. Ortiz who is on [the] tape." A forensic document examiner opined that Ortiz' left-handed handwriting samples and the written pager number given to Valentine, which contained evidence of a right-handed writer, were "entirely different." [6]

The jury found Ortiz guilty of the drug counts, but deadlocked on the counts charging unlawful use of a communication facility, which the government then dismissed. The district court sentenced Ortiz to 210 months'

imprisonment and five years' supervised release.[7]

## II.

Ortiz contends that the district court erred by failing *sua sponte* to address him personally about whether he had knowingly and intelligently waived his right to testify. He maintains that he was unaware his counsel had advised the court that Ortiz had made an "informed" decision not to testify, and that had he known of his right to testify he would have testified.

In *Rock v. Arkansas*, 483 U.S. 44, 49–53, 107 S.Ct. 2704, 2707–10, 97 L.Ed.2d 37 (1987), the Supreme Court recognized that "fundamental to a personal defense" of every criminal defendant is the right to testify in his or her own defense. Concluding that the right to testify "is essential to due process of law in a fair adversary process," *id.* at 51, 107 S.Ct. at 2709 (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) (Sixth Amendment)), and "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony," *id.* at 52, 107 S.Ct. at 2709, the Court acknowledged that "the most important witness for the defense in many criminal cases is the defendant." *Id.*

A number of circuit courts have concluded that the district court does not have a *sua sponte* duty to conduct a colloquy with the defendant at trial to determine whether the defendant has knowingly and intelligently waived the right to testify.[8] In finding no

---

6. In rebuttal the government presented the testimony of two co-defendants, who had entered pleas, that they had delivered drugs to Ortiz, and that one co-defendant had no information that Ortiz was working at the relevant times.

7. The district court denied Ortiz' motion for post-conviction relief pursuant to 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel. Ortiz did not file a notice of appeal. FED.R.APP.P. 3 & 4; *United States v. Hernandez*, 5 F.3d 628, 632 (2d Cir.1993).

8. *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir.1995); *United States v. Brimberry*, 961 F.2d 1286, 1289–90 (7th Cir.1992); *United States v. Teague*, 953 F.2d 1525, 1533 n. 8 (11th Cir.) (en banc), *cert. denied*, 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992); *United States v. Campione*, 942 F.2d 429, 439 (7th Cir.1991); *Under-*

*wood v. Clark*, 939 F.2d 473, 476 (7th Cir.1991); *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir.1991); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir.), *cert. denied*, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990); *United States v. Martinez*, 883 F.2d 750, 757 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir.), *and cert. denied*, 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991); *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir.1987); *United States v. Bernloehr*, 833 F.2d 749, 752 (8th Cir. 1987); *United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir.1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984). *But cf. Jordan v. Hargett*, 34 F.3d 310, 314–15 & n. 4 (5th Cir.1994) (suggesting that an on-the-record colloquy would be beneficial), *reh'g en banc granted on other grounds*, 42 F.3d 1483 (1995), *and on reh'g*, 53 F.3d 94 (1995); *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir.1990) (ques-

duty, the circuits have tended to focus, at least in part, on avoiding interference with the client-counsel relationship and defense strategy. *See, e.g., Pennycooke*, 65 F.3d at 11; *Teague*, 953 F.2d at 1533 n. 8; *Underwood*, 939 F.2d at 476; *Martinez*, 883 F.2d at 757; *Siciliano*, 834 F.2d at 30. Thus, defense counsel, not the court, has the primary responsibility for advising the defendant of his right to testify and for explaining the tactical implications of doing so or not. *E.g. Teague*, 953 F.2d at 1533–34; *Campione*, 942 F.2d at 439. Other concerns expressed by some circuits about a *per se* requirement include whether the inquiry itself would tend to suggest that the district court had an opinion on what the defendant should do, potentially disrupting trial strategy, *e.g., Pennycooke*, 65 F.3d at 11; *Siciliano*, 834 F.2d at 30, and would cause delay. *Underwood*, 939 F.2d at 476.

Nevertheless, some circuits readily acknowledge that there are circumstances when a colloquy will be important. In *Jordan*, the Fifth Circuit suggested that a colloquy would eliminate the uncertainty left by a silent record when the appellate court (as well as the trial court) is confronted with the defendant's claim that his right to testify was denied. 34 F.3d at 314–15. Similarly, in *Pennycooke*, the Third Circuit, upon rejecting a *per se* colloquy requirement, acknowledged that certain "exceptional, narrowly defined circumstances" might necessitate a colloquy, such as where a defendant expresses the desire to testify, or it becomes apparent that an attorney is frustrating the client's desire to testify. 65 F.3d at 12–13. The Seventh Circuit, too, has acknowledged that "an inquiry by the district court into the defendant's desire to testify has much to recommend it," while declining to find a constitutional requirement in the absence of

some indication that the defendant was prevented from exercising that right. *United States v. Thompson*, 944 F.2d 1331, 1345 (7th Cir.1991); *Ortega v. O'Leary*, 843 F.2d 258, 261 n. 1 (7th Cir.), *cert. denied*, 488 U.S. 841, 109 S.Ct.. 110, 102 L.Ed.2d 85 (1988); *see also Vargas*, 920 F.2d at 170, *supra* n. 8. Some state courts, on the other hand, have gone further, to hold that the trial judge should conduct an on-the-record inquiry with a defendant to assure that the defendant understands that the right to testify is a personal right that only the defendant can waive, focusing as well on the desirability of avoiding post-trial issues and facilitating appellate review.[9] The question remains open in this circuit.

◼ We, like our sister circuits and the state courts, have no doubt that a criminal defendant has a fundamental constitutional right to testify that is personal to the defendant and cannot be waived by counsel or the court. *See Boyd*, 586 A.2d at 674 (citing cases). Although the decision to testify involves a strategic choice, the choice remains the defendant's and not his attorney's.[10] Counsel, in turn, has the obligation to advise the defendant of his or her right to testify or not in a manner that would enable the defendant to make a knowing and intelligent choice. *Teague*, 953 F.2d at 1533–34; *Campione*, 942 F.2d at 439; *United States v. Goodwin*, 770 F.2d 631, 637 (7th Cir.1985), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986). In determining whether the district court has an obligation to conduct a colloquy, we recognize that in some other areas involving fundamental and personal constitutional rights that may only be knowingly and intelligently waived by a defendant—such as the decision to plead guilty, forego a jury trial, or forego the assistance of

tioning rule presuming waiver from silent record), *cert. denied*, 502 U.S. 826, 112 S.Ct. 93, 116 L.Ed.2d 64 (1991).

9. *LaVigne v. State*, 812 P.2d 217, 222 (Alaska 1991); *People v. Curtis*, 681 P.2d 504, 514–15 (Colo.1984) (en banc) (citing *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *Culberson v. State*, 412 So.2d 1184, 1186–87 (Miss.1982) (en banc); *see also Boyd v. United States*, 586 A.2d 670, 675–79 (D.C.1991) (dictum).

10. MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.2(a) & cmts. (1995) ("In a criminal case, the lawyer shall abide by the client's decision ... whether the client will testify."); ABA STANDARDS FOR CRIMINAL JUSTICE 4–5.2(a)(iv) (3d ed. 1993) ("whether to testify in his or her own behalf" is a decision "to be made by the accused after full consultation with counsel").

counsel—the Supreme Court has required that courts inquire directly of the defendant. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969) (guilty plea); *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) (assistance of counsel); *Adams v. United States ex rel. McCann,* 317 U.S. 269, 277–78, 63 S.Ct. 236, 240–41, 87 L.Ed. 268 (1942) (jury trial); *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (assistance of counsel).

■ Even so, a defendant's conduct will suffice at times to show a waiver of a fundamental and personal right. For example, the district court may properly infer a waiver of the right to represent one's self when the defendant appears at trial with counsel. *See United States v. Jones,* 514 F.2d 1331, 1333 (D.C.Cir.1975); *cf. McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953–54, 79 L.Ed.2d 122 (1984) (presuming acceptance of representation of counsel when a *pro se* defendant agrees to counsel participation); *North Carolina v. Butler,* 441 U.S. 369, 373 & n. 4, 99 S.Ct. 1755, 1757 & n. 4, 60 L.Ed.2d 286 (1979) ("in at least some cases waiver [of Fifth Amendment right to remain silent] can be clearly inferred from the actions and words of the person interrogated"); *Bernloehr* 833 F.2d at 751–52 (presuming waiver of right to testify from actions of defendant). Because representation by counsel gives rise to a presumption of waiver that is protective of the defendant's interests, where an apparent waiver of a defendant's fundamental and personal right seems detrimental to his interests, the court may well have a duty to inquire directly of the defendant whether his action is knowing and voluntary.

■ We have no occasion, however, to confront the subtleties that may attend the district court's responsibility to conduct a colloquy when a defendant does not take the witness stand. Our review is confined to the trial record and we conclude that the court did not have a *sua sponte* duty to inquire directly of Ortiz whether he had waived his right to testify. We thus reject Ortiz' view that whenever the defendant does not testify there is a *per se* requirement that the district court inquire directly of the defendant

whether he knowingly and intelligently waives his right to testify. Absent evidence of something to alert the district court to a problem in the client-counsel relationship, such as conduct falling below the Sixth Amendment standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a *per se* rule would be an inappropriate interference with the client-counsel relationship when the court can (and should) readily determine from counsel whether the defendant has been properly advised. *Cf. id.* at 688–89, 104 S.Ct. at 2064–65; *see also United States v. Poe,* 352 F.2d 639, 640 (D.C.Cir.1965).

■ However, we also reject the demand rule, requiring that the defendant directly express to the court during the trial the desire to testify, in recognition of the impracticability of placing a burden on the defendant to assert a right of which he might not be aware or to do so in contravention of the court's instructions that the defendant speak to the court through counsel. *See El–Tabech v. Hopkins,* 997 F.2d 386, 388 (8th Cir.1993); *Underwood,* 939 F.2d at 476; *U.S. v. Teague,* 908 F.2d 752, 759–60 (11th Cir. 1990). Notwithstanding the defendant's silence, there may be circumstances, as a number of circuits acknowledge, when the district court must conduct a colloquy with the defendant to assure that he has knowingly and intelligently waived his right to testify. This would be so where there is evidence that the attorney might be overriding the defendant's decision to take the stand. *See Pennycooke,* 65 F.3d at 12–13. So too, it may behoove the district court to inquire directly of the defendant about the voluntariness of a decision to testify or not when the defendant has taken a position that threatens to jeopardize the defense case and there appears to be no rational explanation for the decision. *See Goodwin,* 770 F.2d at 636 (approving of the district court's inquiry (at defense counsel's request) to ensure that the decision to testify was voluntary but criticizing the court's expression to the defendant of surprise at the defendant's decision not to testify, in accord with advice of counsel). The trial record reveals, however, that the district court had

no such *sua sponte* duty to inquire of Ortiz himself.

Early in the defense case, Ortiz' counsel advised the district court that Ortiz was "going to testify." Near the end of the defense case, the district court inquired whether counsel had another witness and Ortiz' counsel stated, "I have one more witness, at least. Potentially two more. Possibly the defendant." Following a luncheon recess, the court asked counsel whether Ortiz was going to testify. Counsel shook her head "no." After examination of the final defense witness, the district court called counsel to the bench:

> The Court: First of all, I take it that your client has made a decision.
>
> [Defense counsel]: Informed decision.
>
> The Court: Informed decision not to testify.
>
> [Defense counsel]: Based on my advice.
>
> The Court: Based on your advice.
>
> [Defense counsel]: Yes, your honor.

Nothing in the trial record gave the district court any reason to doubt Ortiz' counsel's representation. Although the trial record reflects (as a result of the district court's inquiries of Ortiz' counsel) an apparent change in Ortiz' plans to testify, counsel indicated that it was Ortiz who had made the final determination about the change. This is not to suggest that a defendant's silence is dispositive, or that there is an irrebuttable presumption of waiver from a silent record. *See Jordan*, 34 F.3d at 315; *Vargas*, 920 F.2d at 170. Part and parcel of requiring a defendant to communicate with the court through counsel is the likelihood that the defendant will not speak when there is a conflict with counsel; the usual disparities of legal knowledge and the court's likely instruction to speak with counsel all tend to discourage boldness, notwithstanding the occasional outburst by a defendant. *Jordan*, 34 F.3d at 314; *Underwood*, 939 F.2d at 476; *Boyd*, 586 A.2d at 677. Rather, Ortiz' counsel's statement itself gave the district court reason to conclude that counsel understood that the decision was Ortiz' to make and that counsel had advised Ortiz not only of his right but of the advantages and disadvantages of testify-

ing. *See Brimberry*, 961 F.2d at 1289–90 & n. 1; *cf. El–Tabech*, 997 F.2d at 388–89.

Further, although the discussion with counsel might have been extended to make the matters just discussed more explicit, the district court could reasonably conclude that Ortiz had acquiesced in his counsel's advice. *Cf. Jordan*, 34 F.3d at 314–15; *Bernloehr*, 833 F.2d at 751–52. In light of the evidence at trial the district court could well have understood the reasonableness of a decision by Ortiz not to testify in view of the government's reliance on a tape-recorded telephone conversation that a defense expert had testified was probably not Ortiz' voice. Ortiz' failure to testify would hardly jeopardize the defense; to the contrary, as the prosecutor's closing argument implicitly acknowledged, *see infra* Part IV, Ortiz' decision not to testify had the potential of strengthening his defense of mistaken identity (that he was not "Carlos").

Finally, the district court had no reason to suspect any conflict between Ortiz and his counsel with respect to counsel's handling of the defense case. *See Thompson*, 944 F.2d at 1345; *McMeans*, 927 F.2d at 163. Ortiz had not complained about his counsel or any inability to communicate with counsel; according to the government's brief, Ortiz had requested that this particular counsel, who previously had represented him in a criminal case, be his counsel in the instant case. While Ortiz claims that he did not understand English, his counsel hired an interpreter and other interpreters were present during the trial.

For these reasons we conclude that, under the circumstances revealed by the trial record, the district court properly relied on counsel's assertion that Ortiz had acquiesced in her advice not to testify and made no inquiry of Ortiz himself.

### III.

Ortiz also contends that the district court erred by failing to inquire *sua sponte* whether a prospective defense witness could properly assert a blanket Fifth Amendment privilege against self incrimination. Because Ortiz never alerted the district court to his

concern about the breadth of the witness' Fifth Amendment claim, we review for plain error. *United States v. Harrison*, 931 F.2d 65, 70 (D.C.Cir.), *cert. denied*, 502 U.S. 953, 112 S.Ct. 408, 116 L.Ed.2d 356 (1991).

This court made clear in *United States v. Thornton*, 733 F.2d 121, 125–26 (D.C.Cir.1984), that "[i]n unusual cases" "a district judge may sustain a blanket assertion of [the Fifth Amendment] privilege after determining that there is a reasonable basis for believing a danger to the witness might exist in answering *any* relevant question." In *Thornton*, the district court inquired of the witness about his privilege when the witness invoked his privilege while testifying. 733 F.2d at 123–24 & n. 2. In *Harrison*, the district court's inquiry followed a request from counsel for the witness, who was also a defendant, when a co-defendant unexpectedly sought to call the defendant as a witness. 931 F.2d at 70. By contrast, Ortiz' counsel never suggested that there was a need for the district court to inquire whether the witness could properly assert a blanket Fifth Amendment privilege or only a more limited privilege. *United States v. Reese*, 561 F.2d 894, 900 (D.C.Cir.1977). Instead, counsel acceded to the validity of the asserted blanket privilege—informing the court that the prosecutor had advised that the government would prosecute the witness if she was guilty of any crimes, and that the witness could be convicted of conspiracy based on her involvement and assistance in the criminal operation—and focused on obtaining immunity for the witness.

More particularly, Ortiz' counsel advised the court in mid-trial that she had "discovered a witness over the weekend who can provide direct exculpatory evidence on behalf of" Ortiz, but that "the witness has a Fifth Amendment problem." The district court appointed counsel for the witness. Ortiz' counsel thereafter informed the court that the witness' counsel had advised the witness not to testify without immunity. Ortiz' counsel then sought immunity for the witness from the government. When the prosecutor declined to grant immunity, Ortiz' counsel asked the court to grant immunity to the witness. The district court also declined,

citing *Earl v. United States*, 361 F.2d 531, 534–35 (D.C.Cir.1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967).

Because Ortiz' counsel proffered that the witness would testify about knowledge that she obtained while translating telephone conversations involving drug deals for one of the co-defendants, the district court had no basis to conclude that the witness could not assert a blanket privilege. *See Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951). Ortiz' counsel did not proffer a line of questioning to demonstrate that the witness was not entitled to assert a blanket privilege much less indicate any doubt about the asserted privilege. *See Thornton*, 733 F.2d at 126–27. We find no plain error as a result of the district court's failure to inquire *sua sponte* whether the witness was entitled to assert a blanket privilege.

## IV.

Finally, Ortiz contends that the district court abused its discretion by denying his motion for a mistrial after the prosecutor stated in closing argument to the jury that: "Another interesting thing happened with [the defense expert witness who opined that it was probably not Ortiz's voice on the tape recording]. [The witness'] testimony enabled the defendant not to have to speak to you." Relying on *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), Ortiz maintains that the prosecutor impermissibly invited the jury to treat Ortiz' failure to testify as substantive evidence of guilt.

In denying a mistrial, the district court reasoned that the prosecutor did not intend to comment on Ortiz' failure to testify, but instead had commented on Ortiz' voice evidence. The court noted, moreover, that it was not even sure that the Fifth Amendment precluded such a statement because the government was entitled to compel Ortiz to give a voice exemplar. Although, as the district court observed, Ortiz could have been compelled to give a voice exemplar, *United States v. Wade*, 388 U.S. 218, 221–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967), no exemplar was introduced by the government

in the instant case. Under the circumstances, a reasonable juror hearing the prosecutor's statement, framed as it was, might have concluded that the prosecutor was calling attention not simply to the fact that Ortiz had presented a voice expert witness, but to the fact that he had not testified. There were alternative ways for the prosecutor to have argued that the jury had no means to compare the voice on the tapes with Ortiz' voice without adverting to Ortiz' failure "to speak to [the jury]."

In any event, Ortiz can show no prejudice from the prosecutor's statement in closing argument. *See Brecht v. Abramson,* 507 U.S. 619, 628–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993); *United States v. Monaghan,* 741 F.2d 1434, 1443 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985). The jury's inability to reach a unanimous verdict on the communication-facility counts for which voice-identity was critical evidence indicates that the prosecutor's comment "did not affect the jury's ability to weigh the evidence independently and fairly." *See United States v. Chavez–Vernaza,* 844 F.2d 1368, 1378 (9th Cir.1987), *cert. denied,* —— U.S. ——, 114 S.Ct. 1324, 127 L.Ed.2d 672 (1994). Combined with the strength of the government's evidence on the drug counts and the weakness of the defense case, Ortiz has failed to show that the verdict was affected by the statement. *See United States v. Tarazon,* 989 F.2d 1045, 1052 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). We find no abuse of discretion by the district court in denying a mistrial. *See United States v. Childress,* 58 F.3d 693, 731 (D.C.Cir.1995).

Accordingly, we affirm the judgment of conviction.