UNITED STATES of America, Appellee,

v.

Lionel ORTIZ, a/k/a Carlos, a/k/a Leonel Carlos Ortiz, Appellant.

No. 96–3123.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 16, 1998.

Decided Feb. 24, 1998.

Catherine E. Lhamon, Washington, DC, argued the cause as amicus curiae on the side of appellant. Steven H. Goldblatt, Washington, DC, appointed by the court, and Stacey Engelbrecht, student counsel, were on the briefs.

Lionel Ortiz, pro se, was on the brief.

John R. Fisher, Assistant U.S. Attorney, Washington, DC, argued the cause for appel-

lee, with whom Mary Lou Leary, U.S. Attorney at the time the brief was filed, and James E. Boasberg, Assistant U.S. Attorney, were on the brief. Elizabeth Trosman, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a defendant seeking to file a second motion under 28 U.S.C.A. § 2255 to vacate, set aside, or correct a sentence must first obtain an order from the appropriate court of appeals authorizing the district court to consider the motion. *See* 28 U.S.C.A. §§ 2244(b)(3)(A), 2255 (West 1994 & Supp. 1997). Before AEDPA was enacted, Lionel Ortiz filed his first motion under § 2255, while the direct appeal of his criminal convictions was pending, claiming ineffective assistance of trial counsel in violation of his rights under the Sixth Amendment. The district court denied that motion, and Ortiz did not appeal this denial. After the court affirmed his convictions on direct appeal, *see United States v. Ortiz,* 82 F.3d 1066, 1068 (D.C.Cir.1996), and after AEDPA took effect, he filed a motion for authorization to file a second § 2255 motion in order to pursue his claim that he was denied his right to the effective assistance of former appellate counsel in his direct appeal. Ortiz contends that applying AEDPA standards to his motion would be impermissibly retroactive and, alternatively, that he meets the AEDPA standards for filing a second motion. We disagree with both contentions. Although Ortiz has shown cause under pre-AEDPA standards for failing to raise his claim of ineffective assistance of appellate counsel at the time he filed his first § 2255 motion, he fails to show prejudice. *See McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470,

113 L.Ed.2d 517 (1991). Consequently, having failed to show that he could prevail under pre-AEDPA standards, he fails to show that applying AEDPA standards to his second § 2255 motion would have an improper retroactive effect. Because Ortiz also fails to meet AEDPA standards for filing a second § 2255 motion, we deny his motion for authorization. His further contention that he should be allowed to seek relief under 28 U.S.C. § 2241 is not properly before this court, and we do not address it, and his constitutional challenges to AEDPA are foreclosed by Supreme Court precedent. Finally, we hold that the fee provisions of the Prison Litigation Reform Act of 1995 do not apply.

## I.

Enacted on April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, contains provisions changing both the standards and procedures required to pursue the remedy available under 28 U.S.C. § 2255 for federal prisoners seeking relief from illegal confinement.[1] Previously, when a defendant wished to raise claims in a second or successive § 2255 motion and the government pleaded the defense of "abuse of the writ," the defendant had to show both cause and prejudice: cause for failing to raise the claim earlier, that is, "some objective factor external to the defense [that] impeded counsel's efforts" to raise the claim earlier, and " 'actual prejudice' resulting from the errors of which he complains." *McCleskey,* 499 U.S. at 493–94, 111 S.Ct. at 1470 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), and *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)) (internal quotation marks omitted); *accord United States v. Kleinbart,* 27 F.3d 586, 592–93 (D.C.Cir.1994). Under AEDPA, a "pris-

---

1. Section 2255 provides in part:
    A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to im-

pose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
28 U.S.C. § 2255 (1988).

oner" may file a second or successive § 2255 motion only if the appropriate court of appeals first certifies that the motion meets a new set of standards. *See* 18 U.S.C.A. §§ 2244(b)(3)(A), 2255. Thus, the "prisoner" must show that there is either:

> (1) newly-discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty-of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C.A. § 2255.

Ortiz filed a timely appeal from his convictions of conspiracy to distribute cocaine base,[2] distribution of cocaine base,[3] possession with intent to distribute cocaine base,[4] and attempted distribution of cocaine base.[5] *See Ortiz,* 82 F.3d at 1068–69. During the pendency of this appeal, he filed his first § 2255 motion to set aside or correct his sentence on the grounds of ineffective assistance of trial counsel. *See id.* at 1069 n. 7. In his motion, he asserted that trial counsel had been incompetent in five ways: (1) by not pursuing introduction of the testimony of a potential defense witness (Andrea Balbuena) under the exception to the hearsay rule for admissions against penal interest, *see* FED.R.EVID. 804(b)(3); (2) by not limiting cross-examination of Ortiz's co-defendants when they testified in the government's rebuttal case and thus opening the door to further damaging testimony; (3) by improperly advising him not to testify and informing the district court, without his consent, that he would not; (4) by failing to provide him

with an interpreter so that he could communicate with his counsel; and (5) by failing to object to the manner in which a witness was escorted out of the court room. On May 2, 1995, the district court denied the motion without a hearing, finding that, given the "extensive evidence against him," Ortiz would still have been found guilty even had Balbuena's testimony been admitted at trial, had the government's redirect examination of the co-defendants during its rebuttal case not elicited damaging testimony, and had the other alleged errors not occurred. Ortiz did not appeal from the denial of the motion.

Fourteen months later, on April 24, 1996, Congress enacted AEDPA. Six days thereafter, on April 30, 1996, the court affirmed Ortiz's convictions; the court did not reach his ineffective assistance of trial counsel claim because he had waived it by not appealing the denial of his first § 2255 motion. *See Ortiz,* 82 F.3d at 1068, 1069 n. 7. On September 25, 1996, Ortiz filed the instant motion seeking authorization from this court to file a second § 2255 motion in the district court.[6] Ortiz and amicus[7] contend that both trial and appellate counsel were incompetent in his criminal trial and that because application of AEDPA standards to his case would be impermissibly retroactive, he should be given leave to file a second § 2255 motion under the pre-AEDPA *McCleskey* standards. Alternatively, amicus contends that Ortiz satisfies AEDPA's standards for a second § 2255 motion because of newly discovered exculpatory evidence. Amicus further contends that if the court declines to certify Ortiz's second § 2255 motion to the district court, he should be allowed to make a collateral attack on his sentence under 28 U.S.C. § 2241. Ortiz further challenges the constitutionality of AEDPA on the grounds that it

---

**2.** *See* 21 U.S.C. § 846 (1988).

**3.** *See id.* § 841(a) & (b)(1)(A)(iii).

**4.** *See id.*

**5.** *See id.* § 846.

**6.** After the Supreme Court granted certiorari in *Lindh v. Murphy,* this court held the instant appeal in abeyance until that decision was released on June 23, 1997. *See Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

**7.** The court appointed as amicus counsel, to present arguments in support of Ortiz, Steven H. Goldblatt of the Georgetown University Law Center Appellate Litigation Program. *See United States v. Ortiz,* No. 96–8030 (D.C.Cir. Oct. 30, 1996) (order appointing amicus counsel). The court expresses its appreciation to amicus counsel, who did an excellent job in arguing a difficult case.

violates his right to due process by limiting the writ of habeas corpus and violates the Ex Post Facto Clause of the Constitution.[8] The government responds that: applying AEDPA is not unconstitutionally retroactive because Ortiz filed his second motion after the statute took effect; his petition fails to satisfy either criterion for a successive petition under AEDPA; his § 2241 contentions are not properly before the court; and his constitutional arguments are foreclosed by Supreme Court precedent.

We turn first to the retroactivity claim, and upon finding it unpersuasive, we apply AEDPA to Ortiz's motion and then briefly address his remaining contentions.

## II.

■ In general, "congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Landgraf v. USI Film Products,* 511 U.S. 244, 272, 114 S.Ct. 1483, 1500, 128 L.Ed.2d 229 (1994) (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)) (internal quotation marks omitted). In many situations, however, courts can apply statutes enacted after the events that form the basis of the litigation without violating retroactivity rules, including when the new enactment authorizes prospective relief, alters jurisdictional rules, or alters procedural rules. *See id.* at 273–75, 114 S.Ct. at 1501–02. But these exceptions are not bright line rules, *see id.* at 275 n. 29, 114 S.Ct. at 1502 n. 29, and a court must determine, where Congress has not expressly prescribed a statute's proper reach, whether the statute would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," *id.* at 280, 114 S.Ct. at 1505. The analysis must be case-specific, for "if the application of a term [of a statute] would be retroactive as to [the particular defendant], the term will not be applied." *Lindh v.*

*Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

■ Congress did not expressly indicate whether the AEDPA amendments to the procedures and standards for filing second § 2255 motions are to be applied in cases where the first § 2255 motion was filed before the enactment of AEDPA. *See id.* at ——–——, 117 S.Ct. at 2063–64; *In re Hanserd,* 123 F.3d 922, 924 (6th Cir.1997); *Burris v. Parke,* 95 F.3d 465, 468 (7th Cir. 1996) (en banc). Whether the amendments would be impermissibly retroactive in such cases is a question of first impression for this court, and other circuits have developed different approaches. Only the Sixth Circuit adopts the approach that amicus advocates, under which a prisoner who filed a § 2255 motion before the enactment of AEDPA would be allowed to file a successive motion under the "abuse of the writ" cause-and-prejudice standard of *McCleskey. See Hanserd,* 123 F.3d at 933–34. Taking a different tack from the Sixth Circuit, the Seventh and Eleventh Circuits require a showing of detrimental reliance, namely, that the defendant would not have filed the first § 2255 motion had he foreseen the tightening of the standards under AEDPA for filing a second § 2255 motion. *See Alexander v. United States,* 121 F.3d 312, 314 (7th Cir.1997); *In re Magwood,* 113 F.3d 1544, 1552–53 (11th Cir.1997); *In re Medina,* 109 F.3d 1556, 1562 (11th Cir.1997); *Burris,* 95 F.3d at 468–69; *cf. Pratt v. United States,* 129 F.3d 54, 58–59 (1st Cir.1997) (discussing detrimental reliance but denying motion on other grounds). Still other circuits, in considering application of the new § 2255 rules to defendants whose first § 2255 motions were filed before AEDPA's enactment, have either declined to discuss retroactivity, · *see Galtieri v. United States,* 128 F.3d 33, 37–38 (2d Cir.1997); *Triestman v. United States,* 124 F.3d 361, 370 n. 11 (2d Cir.1997); *In re Dorsainvil,* 119 F.3d 245, 247 n. 1 (3d Cir.1997); *In re Vial,* 115 F.3d 1192, 1198 n. 13 (4th Cir.1997), or have

---

8. In his motion for leave to file a second § 2255 motion, Ortiz also challenged the constitutionality of the crack-cocaine drug statute and the government's authority to prosecute him for a drug that is not fully on the controlled drug schedule,

but he abandoned these arguments after the court ordered rebriefing in light of *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). *See United States v. Ortiz,* No. 96–3123 (D.C.Cir. Sept.10, 1997).

assumed that the new rules could not, by definition, be retroactive when applied to motions filed after AEDPA's enactment, *see Hatch v. Oklahoma*, 92 F.3d 1012, 1014 (10th Cir.1996).

While taking different tacks, what the circuits share in their approaches is the requirement dictated by the Supreme Court that the new enactment be retroactive as applied to the particular claim before the court. *See Lindh*, at ——, 117 S.Ct. at 2063. Thus, the new standards and procedures under AEDPA for filing § 2255 motions could only be improperly retroactive as applied to Ortiz if he would have met the former cause-and-prejudice standard under *McCleskey* and previously would have been allowed to file a second § 2255 motion, but could not file a second motion under AEDPA. Although we agree with the parties that Ortiz can show cause, we conclude that he cannot show prejudice and, consequently, that he cannot demonstrate that applying the new AEDPA standards to his claims would be impermissibly retroactive.

■ At the time Ortiz filed his first § 2255 motion, this court encouraged defendants to file such motions when necessary to make records in the district court for use in support of appeals based on ineffectiveness of trial counsel claims. In *United States . v. Cyrus*, 890 F.2d 1245 (D.C.Cir.1989), for example, the court stated that, because "equity and judicial economy require that a criminal defendant build an evidentiary record on his ineffective-assistance claims before appealing his conviction on this basis," the defendant must raise such claims in a motion for a new trial, § 2255 motion, or other collateral attack or face a remand by the court of appeals for an evidentiary hearing, unless an evidentiary hearing has already been held. *Id.* at 1247; *see United States v. Fennell*, 53 F.3d 1296, 1303–04 (D.C.Cir.1995). Where a defendant filed such a motion while a direct appeal was pending, the court generally stayed the appeal until the record was completed in the district court.[9] *See Cyrus*, 890 F.2d at 1247. Second § 2255 motions were then subject to the *McCleskey* standards. *See, e.g., Kleinbart*, 27 F.3d at 592–93. The crux of Ortiz's second § 2255 motion, were we to certify it, is that his allegedly ineffective appellate counsel forfeited his claim of ineffective assistance of trial counsel by failing to appeal the denial of his first § 2255 motion and otherwise represented him incompetently on direct appeal. Because appellate counsel's alleged errors had not yet occurred at the time Ortiz filed his first § 2255 motion, a claim of ineffective assistance of appellate counsel was unavailable to him at that time and, thus, Ortiz has shown cause for his failure to raise the claim earlier.[10]

■ Ortiz fails, however, to demonstrate prejudice from his inability to raise his ineffectiveness of appellate counsel claims because he has not stated a viable claim of ineffective assistance of appellate counsel. To demonstrate ineffective assistance of counsel, Ortiz must show that the performance of his counsel was deficient and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Assuming counsel was deficient, Ortiz has not demonstrated that there is a reasonable probability that the result of his trial would have been different but for appellate counsel's errors. Had appellate counsel appealed the denial of the first § 2255 motion, or otherwise properly raised the claim of ineffective assistance of trial counsel on direct appeal, this court's review could not have resulted in relief for Ortiz.

■ The evidence at trial of Ortiz's complicity was devastating. An undercover

---

9. The court no longer holds direct appeals in abeyance pending resolution of postconviction proceedings in the district court absent extraordinary circumstances. *See* D.C.Cir. R. 47.5.

10. For purposes of this appeal, the court assumes that Ortiz relied on pre-AEDPA law in filing his first § 2255 motion. The government appears to concede that Ortiz thought when he filed his first motion that he would be able to file a second motion under the *McCleskey* standard, and not under the more stringent gatekeeper provision in the AEDPA, which was enacted subsequent to his first motion.

Drug Enforcement Agency ("DEA") agent met with Ortiz (introduced to the agent as "Carlos") on four different days and arranged narcotics sales with him on three of those occasions. *See Ortiz,* 82 F.3d at 1068–69. On the fourth day, when the agent signaled for the arrest of "Carlos," Ortiz was arrested carrying 125 grams of crack. *See id.* at 1069. All of the meetings were observed and photographed, and the undercover agent and the surveillance agents identified Ortiz as "Carlos." *See id.* In response, Ortiz presented, weakly, the defense of misidentification, based on challenges to taped telephone conversations and a handwriting exemplar[11] and on employment records showing that he was working on the dates of the drug transactions. *See id.* To corroborate this defense, Ortiz's trial counsel attempted to call as a witness Andrea Balbuena,[12] but she refused to testify without full immunity, which the government declined to give and the district court declined to order.[13] While Balbuena's testimony might have damaged the credibility of one of the government's rebuttal witnesses, it would not have affected the evidentiary force of the DEA agents' testimony, the photographs, or Ortiz's arrest while carrying drugs that he had arranged to sell to a DEA agent. Similarly, even if the damaging redirect examination of the co-defendants had not occurred, Ortiz had been allowed to testify, and trial

counsel had not done the other things of which Ortiz now complains, there is virtually no likelihood that the outcome of the trial would have been different. It follows that there can be no prejudice from appellate counsel's failure to appeal the denial of the first § 2255 motion alleging ineffective assistance of trial counsel.[14]

Accordingly, because Ortiz could not have made out a viable claim of ineffective assistance of appellate counsel under *Strickland,* and the denial of his second § 2255 motion would, therefore, not prejudice him, Ortiz fails to meet the requirements of the former "abuse of the writ" standard of *McCleskey,* and the new AEDPA standards cannot be improperly retroactive as applied to him.

### III.

■ Ortiz contends in the alternative that he can satisfy the new AEDPA standards for filing a second § 2255 motion, but this too is unpersuasive. Ortiz does not contend that a new, retroactive rule of constitutional law governs his case, *see* 28 U.S.C.A. § 2255, but rather that, because it has never been heard and evaluated by a factfinder, Balbuena's testimony is "newly discovered evidence that, viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found" Ortiz guilty. 28

---

**11.** A foreign language interpreter testified that Ortiz probably was not the person whose voice was recorded on the telephone tapes because Ortiz's English was not good enough. A forensic document examiner testified that Ortiz's writing samples did not match "Carlos's" writing style.

**12.** Balbuena had indicated that, during the relevant period, she was the girlfriend of one of Ortiz's co-defendants, Hilario Sanchez–Reyes and was prepared to testify that she had introduced Ortiz to Sanchez–Reyes, that they did not know each other well, that she had spoken with "Carlos" by telephone and knew that Ortiz was not "Carlos" and was not involved in Sanchez–Reyes's drug activities, and that Sanchez–Reyes had told her he would lie in testimony against Ortiz in order to help himself.

**13.** Trial counsel abandoned any further effort to place Balbuena's testimony before the jury. Amicus contends that trial counsel should have challenged her blanket assertion of privilege and asked the court to order her to testify as to

matters that would not implicate her Fifth Amendment rights. *See United States v. Thornton,* 733 F.2d 121, 125–26 (D.C.Cir.1984); *United States v. Reese,* 561 F.2d 894, 900 (D.C.Cir.1977).

**14.** Ortiz's second § 2255 motion is based on the argument that absent appellate counsel error, trial counsel's alleged errors would have been examined by this court. Ortiz also contends that, absent appellate counsel's error, this court would have considered his claim that the district court abused its discretion in not holding an evidentiary hearing on his first § 2255 motion. When a § 2255 motion involves ineffective assistance of counsel claims, a hearing is unnecessary if the alleged deficiencies of counsel did not prejudice the defendant. *See United States v. Sayan,* 968 F.2d 55, 66 (D.C.Cir.1992) (citing *United States v. Patterson,* 652 F.2d 1046, 1048 (D.C.Cir.1981)). Hence, because Ortiz cannot show prejudice as a result of his trial counsel's conduct, appellate counsel's failure to appeal the denial of the first § 2255 motion did not prejudice Ortiz.

U.S.C.A. § 2255. The traditional definition of newly discovered evidence is evidence "discovered since the trial," at least with respect to motions for a new trial, *United States v. Lafayette,* 983 F.2d 1102, 1105 (D.C.Cir.1993) (quoting *Thompson v. United States,* 188 F.2d 652, 653 (D.C.Cir.1951)) (internal quotation marks omitted), and Balbuena's evidence was known to Ortiz at the time of trial. Ortiz cites no authority for his newly minted definition of "newly discovered" evidence, much less for the proposition that a different definition of "newly discovered" evidence applies under AEDPA. But, regardless of whether Balbuena's testimony is considered "newly discovered" evidence, there is no basis to conclude that this court would have concluded that her testimony would have had any significant impact on the outcome of the trial given the nature of the government's other evidence. Hence, the "newly discovered" evidence would not "establish by clear and convincing evidence that no reasonable factfinder would have found" Ortiz guilty. 28 U.S.C.A. § 2255. Because he meets neither AEDPA standard for filing a second § 2255 motion, we deny Ortiz's motion for leave to file such motion.

### IV.

Ortiz's other contentions merit only brief discussion.

■ First, Ortiz contends that if he is denied leave to file a second § 2255 motion, he should be permitted to raise his ineffective assistance of appellate counsel claim through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Section 2255 provides that when the § 2255 remedy is "inadequate or ineffective to test the legality of [the defendant's] detention," the defendant may seek relief under § 2241. 28 U.S.C. § 2255. Ortiz maintains that if he cannot file a second § 2255 motion, he will be unable to test his claim of ineffective assistance of appellate counsel, and thus the § 2255 motion is "inadequate or ineffective." Because there is no petition under § 2241 before us, we decline to address this contention. *See* FED. R.APP. P. 22(a); D.C.CIR. R. 22, 47.2; *cf. United States v. Lorentsen,* 106 F.3d 278, 279 (9th Cir.1997).

■ Second, Ortiz challenges the constitutionality of AEDPA on two grounds. He contends that, in enacting AEDPA, Congress violated his right to due process and the Suspension Clause of the Constitution [15] by limiting the writ of habeas corpus through the AEDPA amendments to the procedures for filing second motions under 28 U.S.C. § 2255.[16] To the contrary, in *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the Supreme Court held that the new procedures and new standards for second motions created by the AEDPA are a constitutionally permissible restraint on "abuse of the writ." *See id.* at ———–———, 116 S.Ct. at 2339–40. Ortiz also contends that AEDPA violates the Ex Post Facto Clause [17] by retroactively altering the standards of proof in place at the time of his crimes and by curtailing the writ of habeas corpus. In *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), however, the Supreme Court made clear that the Ex Post Facto Clause is concerned with retroactive changes to the definition of crimes, defenses, or punishments, and is not violated if a statute "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, af-

15. "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2.

16. Ortiz also raises various non-constitutional arguments as to the inability of Congress to limit the writ of habeas corpus in general and in particular by linking it to the remedy available under § 2255. The Supreme Court's discussion of the historic expansion of the writ, coupled with its acceptance of AEDPA's amendments, refute Ortiz's contentions. *See Felker* v. *Turpin,*

518 U.S. 651, ——, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996); *see also Lindh v. Murphy,* 96 F.3d 856, 868–69 (7th Cir.1996) (en banc), *rev'd on other grounds,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Further, the Supreme Court has made clear that, for finality's sake, Congress may treat first habeas petitions differently than successive ones. *See Lonchar v. Thomas,* 517 U.S. 314, 323–25, 116 S.Ct. 1293, 1299, 134 L.Ed.2d 440 (1996).

17. "No Bill of Attainder of ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

ter its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed." *Id.* at 52, 110 S.Ct. at 2724. Ortiz makes no plausible claim that AEDPA implicates any of these changes. Further, the constitutional prohibition on ex post facto laws applies only to statutes that disadvantage the offender affected by them. *See id.* at 41, 110 S.Ct. at 2718–19. Because Ortiz does not satisfy the standards for successive § 2255 motions in place prior to the enactment of AEDPA, applying AEDPA to his motion cannot make him any worse off than he was prior to its enactment.

### V.

■ Finally, we agree with the parties that the fee provisions of the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321, do not apply. Under 28 U.S.C. § 1915(b), as amended by the PLRA, a prisoner proceeding *in forma pauperis* who files a "civil action" must pay all filing fees. 28 U.S.C.A. § 1915(b) (West Supp.1997). Although the statute does not define the term "civil action," every circuit to reach the issue has concluded that the filing fee provisions do not apply to habeas corpus petitions.[18] The government joins amicus in observing that, while a § 2255 motion is in some ways, like a petition under § 2254, a civil action, a motion to the court of appeals seeking leave to file a successive § 2255 motion does not constitute a "civil action" within the meaning of PLRA. *See United States v. Levi,* 111 F.3d 955, 956 (D.C.Cir.1997).

Congress enacted the PLRA to limit frivolous prisoner civil rights and prison condition cases, not habeas corpus or § 2255 actions based on claims such as those in Ortiz's instant motion. *See, e.g.,* 141 CONG. REC. S7524–25 (daily ed. May 25, 1995) (statement of Sen. Dole). That Congress enacted AEDPA just two days prior to enacting the PLRA

suggests that its intended amendments to habeas corpus law, including the § 2255 remedy, were contained in AEDPA, rather than in the PLRA. *See Smith v. Angelone,* 111 F.3d 1126, 1130–31 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2, 138 L.Ed.2d 1036 (1997); *Naddi v. Hill,* 106 F.3d 275, 277 (9th Cir.1997). For these reasons, articulated by our sister circuits, we hold that the *in forma pauperis* filing fee provisions of the PLRA do not apply to proceedings under § 2255.

Accordingly, we deny Ortiz's motion for authorization to file a second § 2255 motion, we do not reach his § 2241 contention, we reject his constitutional challenges to AEDPA, and we hold that the fee provisions of PLRA are inapplicable.

---

18. *See Smith v. Angelone,* 111 F.3d 1126, 1129–31 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2, 138 L.Ed.2d 1036 (1997); *Anderson v. Singletary,* 111 F.3d 801, 803–06 (11th Cir.1997); *United States v. Simmonds,* 111 F.3d 737, 741–44 (10th Cir.1997); *Naddi v. Hill,* 106 F.3d 275, 277 (9th Cir.1997); *United States v. Cole,* 101 F.3d 1076, 1077 (5th Cir.1996); *Santana v. United States,* 98 F.3d 752, 754–56 (3d Cir.1996); *Martin v. United States,* 96 F.3d 853, 855–56 (7th Cir.1996); *Reyes v. Keane,* 90 F.3d 676, 678 (2d Cir.1996).