******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* NUELITO MOREL-VARGAS
## (SC 20572)

McDonald, D'Auria, Mullins, Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of the crime of sexual assault in the first degree, the defendant appealed. The defendant, a non-English speaker who required the use of an interpreter, did not testify in his own defense at trial. The prosecutor, before deciding whether to rest the state's case, indicated that she would proceed directly to closing argument if the defense was not going to introduce any evidence. Defense counsel replied that he had had extensive conversations with the defendant regarding his decision whether to testify and that it was unlikely that the defense would introduce evidence, but that he would like to confer with the defendant one more time. The court granted a short recess to allow defense counsel the opportunity to confer with the defendant. Thereafter, defense counsel informed the trial court that the defendant would not testify, and the defendant did not express any disagreement or concern in response to counsel's representation. Although the trial court inquired of defense counsel whether it should conduct a canvass, defense counsel replied, "I think we're all right." After the jury returned to the courtroom, defense counsel again indicated that the defense would "rest on the state's case," and the defendant remained silent. On appeal, the defendant claimed, inter alia, that, as a matter of constitutional law, a criminal defendant personally must inform the trial court, either orally or in writing, that he is waiving his right to testify, that counsel's in-court representation that the defendant waived his right to testify was invalid and, therefore, that his conviction must be reversed. *Held*:

1. The defendant could not prevail on his unpreserved claim that his conviction must be reversed on the ground that he did not affirmatively inform the trial court that he was waiving his right to testify, this court having concluded that a trial court is not constitutionally required to obtain such an on-the-record waiver from the defendant, himself: this court concluded, consistent with the majority of courts that have ruled on the issue, that the right to testify is a personal constitutional right that can be waived only by the defendant, rather than a tactical right that defense counsel may waive on a criminal defendant's behalf as a matter of trial strategy; nevertheless, the right to testify is not among the personal constitutional rights that require an affirmative waiver on the record by the criminal defendant, himself, as the majority of courts have concluded that a criminal defendant's waiver of that right may be inferred from the defendant's act of not taking the stand or from defense counsel's in-court representation that the defendant has elected not to testify combined with the defendant's coincident silence, and, in the absence of evidence of a problem in the attorney-client relationship, the representation by defense counsel that a defendant is waiving his right to testify, together with the defendant's silence at the time of counsel's in-court representation, satisfies the constitutional requirement of a knowing, intelligent and voluntary waiver; moreover, courts have declined to create a per se canvass requirement on the ground that a colloquy with a judge regarding the right to testify may, in some circumstances, run the risk of improperly influencing a criminal defendant's decision not to testify; furthermore, the defendant could not prevail on his claim that this court's decision in *State* v. *Gore* (288 Conn. 770), which held that the right to a jury trial is a personal constitutional right that a criminal defendant must personally waive, required a contrary conclusion, as this court had held in other cases prior to *Gore* that the waiver of the right to self-representation and the right against self-incrimination, both personal constitutional rights, could be effectuated in the absence of an affirmative, on-the-record indication from the defendant, himself, and nothing in *Gore* suggested that its holding was applicable to all personal constitutional rights.

2. In the exercise of its supervisory authority over the administration of

justice, this court required, in future cases, that a trial court presiding over a criminal trial either canvass the defendant prior to the waiver of his right to testify in order to ensure that the waiver is made knowingly, intelligently and voluntarily, or, alternatively, inquire of defense counsel directly to determine whether counsel has adequately advised the defendant regarding the waiver of his right to testify, but only when defense counsel advises the trial court that counsel believes that a direct canvass carries the risk of inadvertently interfering with a decision made by the defendant after extensive conversations with counsel regarding trial strategy.

3. This court declined to review the defendant's unpreserved claim that the prosecutor had committed improprieties during her direct examination of the victim by virtue of her allegedly excessive use of leading questions, in violation of the defendant's right to a fair trial, as the defendant's challenge to the prosecutor's use of leading questions was purely evidentiary in nature rather than a constitutional claim that, even though unpreserved, could be reviewed on appeal under this court's decisions in *State* v. *Williams* (204 Conn. 523) and *State* v. *Warholic* (278 Conn. 354).

Argued October 22, 2021—officially released May 10, 2022

*Procedural History*

Substitute information charging the defendant with the crime of sexual assault in the first degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kavanewsky, J.*; verdict and judgment of guilty, from which the defendant appealed. *Affirmed.*

*Megan L. Wade*, assigned counsel, with whom were *James P. Sexton*, assigned counsel, and, on the brief, *Emily Graner Sexton*, assigned counsel, and *Meryl R. Gersz*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Pamela Esposito*, assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. In this appeal, we must decide which procedures are required for a defendant to validly waive his right to testify on his own behalf at or during a criminal trial. The defendant, Nuelito Morel-Vargas, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree. On appeal, the defendant, who did not testify at trial, challenges defense counsel's purported waiver of his right to testify. Specifically, the defendant contends that defense counsel's representation on the record, in the presence of a defendant, that the defendant has waived his right to testify, together with the defendant's coincident silence, is insufficient to constitute a waiver of that right. We disagree with the defendant and conclude that the constitution does not require that a defendant, himself, personally assert the waiver of his right to testify on the record. Nevertheless, we acknowledge that an on-the-record canvass of a defendant is the best practice to ensure that the defendant's waiver of his constitutional right to testify is made knowingly, intelligently and voluntarily. Therefore, we exercise our supervisory authority to require, prospectively, that a trial court either canvass the defendant or, in certain circumstances, inquire of defense counsel directly to determine whether counsel properly advised the defendant regarding the waiver of his right to testify.

The jury reasonably could have found the following facts. In 2015, the defendant was charged with sexual assault in the first degree. The charges stemmed from a sexual assault that occurred after the defendant drove the victim, S,[1] home from a friend's party.

At trial, the defendant, a non-English speaker who required the use of an interpreter, did not testify in his own defense. As the prosecutor was deciding whether she would rest the state's case-in-chief, she indicated that, "if the defense [was] not going to put on evidence," she would proceed directly to closing argument. Defense counsel replied that it was unlikely that the defense would introduce evidence but requested "one last opportunity to briefly discuss with [his] client his decision to testify or not." Counsel further indicated: "We had extensive conversations about [the defendant's decision whether to testify] already, and I think we settled on a decision. But I just—after—we're at the point where he's now seen everything, and I just want to make sure that that is still where he's at." The court, while remaining on the bench, allowed a recess for defense counsel to confer with the defendant.

After the court returned from the recess, defense counsel informed the court, "I've had an opportunity to confer with my client, Your Honor, thank you; and he's not going to testify." The court responded, "[o]kay. Do you wish me to canvass in that regard, or are you

all right?" Defense counsel replied, "I think we're all right." Thereafter, the state rested its case. The trial court then asked defense counsel whether the defense would present any evidence, and defense counsel indicated that the defense would "rest on the state's case." Subsequently, the jury found the defendant guilty, and he was sentenced to fifteen years of incarceration, execution suspended after eight years, followed by ten years of probation and registration on the sex offender registry for life. The defendant appealed to the Appellate Court from the trial court's judgment, and the appeal was transferred to this court.

The defendant raises two claims on appeal. First, he claims that the constitution[2] requires that the defendant, himself, affirmatively inform the trial court, either orally or in writing, that he is waiving his right to testify. As a result, the defendant contends, his counsel's in-court representation that the defendant waived his right to testify was invalid, and his conviction must be reversed. Although, in the defendant's view, the constitution requires an affirmative indication of the waiver of the right to testify on the record from the defendant personally, the defendant concedes that the constitution does not mandate the form that this particular waiver must take. Accordingly, the defendant requests that, consistent with the approach we took in *State* v. *Gore*, 288 Conn. 770, 786–90, 955 A.2d 1 (2008), we exercise our supervisory authority to create a procedural rule that would require trial courts to canvass defendants to ensure that the waiver of their right to testify is made knowingly, intelligently and voluntarily. Second, as a separate ground for reversing his conviction, the defendant argues that he was deprived of a fair trial due to certain instances of prosecutorial impropriety based on the prosecutor's excessive use of leading questions during her direct examination of S.

We conclude that defense counsel's in-court representation that the defendant waived his right to testify, together with the defendant's coincident silence, satisfied the constitutional requirement for a valid waiver. Nevertheless, because we recognize that an on-the-record canvass is the best practice, we exercise our supervisory authority over the administration of justice to require, prospectively, that a trial court, when presiding over a criminal trial, either canvass the defendant or, in certain circumstances, inquire of defense counsel whether counsel adequately advised the defendant regarding the waiver of his right to testify. Finally, we conclude that the defendant's claim alleging prosecutorial impropriety is unreviewable.

I

A

The defendant first contends that his conviction must be reversed because the trial court did not obtain an

affirmative indication on the record from the defendant, himself, that he had personally waived his right to testify on his own behalf, as required by the federal and state constitutions. The defendant does not contend that he was unaware of his right to testify, that he intended to testify at trial, or that his counsel prohibited him from testifying. Instead, he argues that the trial court's failure to obtain an on-the-record waiver from the defendant himself merits reversal. The state argues that, although the right to testify is a personal constitutional right, it does not follow that, to effectively waive that right, the defendant himself must affirmatively articulate his waiver on the record. According to the state, although certain personal constitutional rights must be waived by a defendant on the record, the waiver of other personal constitutional rights—including the right to testify—can be accomplished through other means.

We begin with the standard of review and relevant legal principles. The defendant did not raise this claim at trial and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40; see *In re Yasiel R.*, supra, 781 (modifying third prong of *Golding*). Because the record is adequate for review, and the defendant's claim, which alleges a violation of his fundamental right to testify, is of constitutional magnitude; see, e.g., *Rock* v. *Arkansas*, 483 U.S. 44, 51, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); our inquiry focuses on whether the violation alleged by the defendant exists.

In *Rock* v. *Arkansas*, supra, 483 U.S. 44, the United States Supreme Court held that there is a constitutional right to testify in one's own defense. Id., 51. We must now address significant questions concerning this right left unanswered by *Rock*. First, we must determine whether the right to testify is a tactical right, which defense counsel may waive on the defendant's behalf as a matter of trial strategy—an affirmative determination of which would end our inquiry; see, e.g., *State* v. *Culbreath*, 340 Conn. 167, 179, 263 A.3d 350 (2021) ("defense counsel may waive certain tactical trial rights that are not personal to the defendant . . . as part of trial strategy" (internal quotation marks omitted))—or a personal constitutional right, which can be waived by the defendant alone. Second, if the right to testify

in one's own defense is a personal constitutional right, we must decide what is constitutionally required to demonstrate that a criminal defendant, himself, knowingly, intelligently and voluntarily waived that right. Specifically, we must determine whether the record must contain some affirmative indication from a defendant, himself, that the defendant is waiving his right to testify, or, alternatively, whether defense counsel's in-court expression of the waiver on the defendant's behalf, combined with the defendant's silence while counsel makes this representation, may constitute a knowing, intelligent and voluntary waiver. We undertake these inquiries in turn.

We note initially that "[w]hat suffices for waiver depends on the nature of the right at issue. [W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel." (Citations omitted; internal quotation marks omitted.) *New York* v. *Hill*, 528 U.S. 110, 114, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000). Included in the former category of rights are decisions personal to a criminal defendant—namely, decisions that affect personal constitutional rights—such as the decision of whether to enter a guilty plea, waive a jury trial, and pursue an appeal. See *State* v. *Gore*, supra, 288 Conn. 779 n.9. Included in the latter category are tactical rights, which primarily involve trial strategy and tactics, such as "the statutory protection of a probable cause hearing . . . the right to call witnesses . . . and the composition of a jury charge." (Citations omitted.) Id.[3]

Although this court previously has recognized the tactical versus personal rights distinction in other contexts; see, e.g., id., 778–81; *State* v. *Gibbs*, 254 Conn. 578, 610–11, 758 A.2d 327 (2000); it has never affirmatively analyzed whether a criminal defendant's right to testify is a tactical or personal right. A review of our jurisprudence in this area, however, reveals that this court has considered the right to testify as belonging to the defendant. See *State* v. *Jan G.*, 329 Conn. 465, 474, 186 A.3d 1132 (2018) ("[t]he defendant's right to testify . . . cannot be waived by counsel" (internal quotation marks omitted)). After considering the tactical versus personal rights distinction in the present case, consistent with the vast majority of other state and federal courts that have addressed this question, we conclude, and the parties agree, that a defendant's right to testify is a personal constitutional right that can be waived only by the defendant. See, e.g., *Brown* v. *Artuz*, 124 F.3d 73, 77 (2d Cir. 1997) ("every [federal court of appeals] that has considered this question has placed the defendant's right to testify in the 'personal rights' category—

i.e., waivable only by the defendant himself regardless of tactical considerations"), cert. denied, 522 U.S. 1128, 118 S. Ct. 1077, 140 L. Ed. 2d 135 (1998); see also, e.g., id. (citing cases); *Boyd* v. *United States*, 586 A.2d 670, 674 (D.C. 1991) (citing cases).

We reach this conclusion for two reasons. First, although the United States Supreme Court in *Rock* did not explicitly classify the right to testify in one's own defense as a personal constitutional right, the court did compare a criminal defendant's right to testify with the right of self-representation and described the defendant's right to testify as "[*e*]*ven more fundamental to a personal defense* than the right of self-representation . . . ." (Citation omitted; emphasis added.) *Rock* v. *Arkansas*, supra, 483 U.S. 52. The court's designation of the right to testify in one's own defense as "more fundamental" than the right to self-representation— which the court deemed a personal constitutional right in *Faretta* v. *California*, 422 U.S. 806, 819–20, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)—logically implies that the decision of whether to testify is also personal to the defendant. Second, in *Rock*, the Supreme Court noted that a criminal defendant's right to testify is "a necessary corollary to the [f]ifth [a]mendment's guarantee against compelled testimony. . . . Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." (Citation omitted; internal quotation marks omitted.) *Rock* v. *Arkansas*, supra, 52–53. Indeed, "[a] criminal defendant clearly cannot be compelled to testify by defense counsel who believes it would be in the defendant's best interest to take the stand. It is only logical, as the Supreme Court has recognized, that the reverse also be true: A criminal defendant cannot be compelled to remain silent by defense counsel." *United States* v. *Teague*, 953 F.2d 1525, 1532 (11th Cir.), cert. denied, 506 U.S. 842, 113 S. Ct. 127, 121 L. Ed. 2d 82 (1992).

We pause to explain one fleeting reference in *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990), overruled in part on other grounds by *State* v. *Skakel*, 276 Conn. 633, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006), that could be misunderstood to suggest that the right to testify in one's own defense is a tactical right. In *Paradise*, this court held that a trial judge does not have an affirmative duty to canvass a criminal defendant regarding the waiver of the defendant's right to testify. See id., 404–405. In our summary analysis of the issue, we did not explicitly apply the distinction between personal and tactical rights. The following language is included in our analysis: " '[Although] the due process clause of the [f]ifth [a]mendment may be understood to grant the accused the right to testify, the "if" and "when" of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney.' " Id., 405, quoting *United States* v.

*Systems Architects, Inc.*, 757 F.2d 373, 375 (1st Cir.), cert. denied, 474 U.S. 847, 106 S. Ct. 139, 88 L. Ed. 2d 115 (1985). It is clear to us that the court's recognition that the "if" and "when" of whether the accused will testify is primarily a matter of trial strategy does not establish that the court in *Paradise* considered the right to testify in one's own defense to be a tactical right. Rather, the reference merely reflects the court's uncontroversial acknowledgment that the decision of whether to testify—although ultimately the defendant's choice—is a strategic decision, involving consultation between the defendant and his counsel. Indeed, a personal constitutional right can still be exercised strategically. See, e.g., *Brooks* v. *Tennessee*, 406 U.S. 605, 612, 92 S. Ct. 1891, 32 L. Ed. 2d 358 (1972) ("[w]hether the defendant is to testify is an important tactical decision as well as a matter of constitutional right"); *United States* v. *Teague*, supra, 953 F.2d 1532 (holding that right to testify "is personal to the defendant and cannot be waived either by the trial court or by defense counsel," and also acknowledging that "[t]he decision whether a criminal defendant should take the witness stand in his own trial unquestionably has tremendous strategic importance").[4]

Having concluded that the right to testify in one's own defense is a personal constitutional right, we must next determine whether the constitution mandates the form the waiver of that right must take. The defendant argues that defense counsel's in-court expression of the waiver on a defendant's behalf, combined with the defendant's silence while counsel makes this representation, is insufficient to constitute a knowing, intelligent and voluntary personal waiver. The defendant contends that the constitution requires that a criminal defendant, himself, affirmatively inform the trial court, either orally or in writing, of his decision to waive his right to testify. Specifically, the defendant asks this court, as a constitutional minimum, to adopt the "colloquy approach," as described in *Boyd* v. *United States*, supra, 586 A.2d 675–76, which would require a trial court to engage in a brief, on-the-record colloquy with the defendant to ensure that he has knowingly waived his right to testify.[5] The state disagrees and argues that, although the right to testify in one's own defense is a personal constitutional right, not all personal constitutional rights require affirmative waivers by a defendant, himself, on the record. The state argues that the waiver of the right to testify, like the waiver of the right to silence, to represent oneself at trial, or to take an appeal, does not require an on-the-record indication from a defendant, himself, that he has chosen to waive his right. We agree with the state.

As we have explained, "[i]n general, federal and state constitutional and statutory rights can be waived"; (internal quotation marks omitted) *New Haven* v. *Local 884, Council 4, AFSCME, AFL-CIO*, 237 Conn. 378, 385,

677 A.2d 1350 (1996); and "[t]he mechanism by which a right may be waived . . . varies according to the right at stake." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 467, 10 A.3d 942 (2011). The standard for an effective waiver of a constitutional right related to the procedure for the determination of guilt or innocence, such as the right to testify in one's own defense, "is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the [rules of practice]. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to [testify]. . . . Our inquiry is dependent [on] the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the [defendant]. . . . In examining the record, moreover, we will indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . [Id.] In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record. See *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)." (Citations omitted; internal quotation marks omitted.) *State* v. *Gore*, supra, 288 Conn. 776–77.

In determining the form that the waiver of a criminal defendant's constitutional right to testify must take, we recognize that, in some areas involving personal constitutional rights, this court has required an affirmative waiver by the defendant, himself, on the record, following a trial court's inquiry. See, e.g., *State* v. *Braswell*, 318 Conn. 815, 828, 123 A.3d 835 (2015) (assistance of counsel); *State* v. *Gore*, supra, 288 Conn. 783–84 (jury trial); *State* v. *Carter*, 243 Conn. 392, 397–98, 703 A.2d 763 (1997) (guilty plea). For certain other personal constitutional rights, however, we have determined that a trial court may properly infer waiver from the defendant's conduct. See, e.g., *State* v. *Pires*, 310 Conn. 222, 246–49, 77 A.3d 87 (2013) (right to self-representation); *State* v. *Castonguay*, 218 Conn. 486, 491–92 n.2, 590 A.2d 901 (1991) (right against self-incrimination).

The majority of courts that have considered the requirements for a valid waiver of the right to testify have determined that a criminal defendant's waiver of this right may be inferred from the defendant's conduct,

namely, from the defendant's act of not taking the stand; see, e.g., *State* v. *Thomas*, 128 Wn. 2d 553, 559, 910 P.2d 475 (1996); or defense counsel's in-court representation that the defendant has elected not to testify, together with the defendant's coincident silence. See, e.g., *United States* v. *Ortiz*, 82 F.3d 1066, 1072 (D.C. Cir. 1996). For example, in *Ortiz*, the United States Court of Appeals for the District of Columbia Circuit rejected the defendant's argument that, "whenever [a criminal] defendant does not testify," "there is a per se requirement that the [trial] court inquire directly of the defendant whether he knowingly and intelligently waives his right to testify." Id., 1071. The District of Columbia Circuit reasoned that it is ultimately defense counsel, not the trial court, who has the obligation to advise a defendant of his right to testify "in a manner that would enable the defendant to make a knowing and intelligent choice." Id., 1070. "This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an intentional relinquishment or abandonment of a *known* right or privilege." (Emphasis in original; internal quotation marks omitted.) *United States* v. *Teague*, supra, 953 F.2d 1533.[6] In the absence of evidence of a problem in the attorney-client relationship, the representation by defense counsel that a defendant is waiving his right to testify, together with the defendant's silence at the time of counsel's in-court representation, satisfies the constitutional requirement of a knowing, intelligent and voluntary waiver. A per se rule requiring a canvass would "inappropriate[ly] [interfere] with the client-counsel relationship when the court can . . . readily determine *from counsel* whether the defendant has been properly advised." (Emphasis added.) *United States* v. *Ortiz*, supra, 1071. Indeed, we may presume, in the absence of evidence to the contrary, that defense counsel provided the defendant with the information necessary to make an informed decision regarding the waiver of his right to testify. See, e.g., *State* v. *Castonguay*, supra, 218 Conn. 492 n.2.

Courts have also declined to create a per se canvass requirement on the ground that a colloquy with a judge regarding the right to testify may, in some circumstances, risk improperly influencing a defendant's decision *not* to testify. See, e.g., *United States* v. *Martinez*, 883 F.2d 750, 760 (9th Cir. 1989), vacated on other grounds, 928 F.2d 1470 (9th Cir.), cert. denied, 501 U.S. 1249, 111 S. Ct. 2886, 115 L. Ed. 2d 1052 (1991). As the United States Court of Appeals for the Third Circuit has explained, "[t]he right to testify qualitatively differs from those constitutional rights [that] can be waived only after the [trial] court inquires into the validity of the waiver. In anchoring the accused's right to testify to the [c]onstitution, the [United States] Supreme Court in *Rock* . . . described it as a necessary corollary to the [f]ifth [a]mendment's guarantee against compelled

testimony . . . . Exercise of either the right to testify or the right not to testify necessarily would waive the other right. Thus, a trial court's advice as to the right to testify could inappropriately influence the defendant to waive his [or her] constitutional right not to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and more fragile right." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *United States* v. *Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995); see, e.g., *United States* v. *Anderson*, 1 F.4th 1244, 1259 (11th Cir. 2021) (recognizing that certain questions posed by trial court regarding defendant's right to testify "might disturb the attorney-client relationship, undermine the defendant's ability to make a knowing and intelligent decision, or overpower the defendant's will"); *United States* v. *Campione*, 942 F.2d 429, 439 (7th Cir. 1991) ("[d]iscussing the issue [of whether the defendant will testify] directly with the defendant may inappropriately involve the judge in the unique attorney-client relationship, raising . . . [f]ifth [a]mendment problems" (internal quotation marks omitted)). Moreover, courts have deemed it "ill-advised to have judges intrude into the attorney-client relationship or disrupt trial strategy with a poorly timed interjection." (Internal quotation marks omitted.) *State* v. *Lee*, 12 Wn. App. 2d 378, 390, 460 P.3d 701, review denied, 195 Wn. 2d 1032, 468 P.3d 622 (2020).

We find these rationales persuasive and, accordingly, consistent with the majority of federal courts of appeals that have ruled on this issue, conclude that a trial court is not constitutionally required to obtain an on-the-record waiver from the criminal defendant, himself. See, e.g., *Brown* v. *Artuz*, supra, 124 F.3d 79; *United States* v. *Ortiz*, supra, 82 F.3d 1071–72; *United States* v. *Pennycooke*, supra, 65 F.3d 11–12; *United States* v. *Brimberry*, 961 F.2d 1286, 1289–90 (7th Cir. 1992); *United States* v. *Teague*, supra, 953 F.2d 1533 n.8; *United States* v. *McMeans*, 927 F.2d 162, 163 (4th Cir. 1991); *United States* v. *Martinez*, supra, 883 F.2d 760. In so holding, we emphasize that it is defense counsel's responsibility to advise his or her client, the defendant, of the benefits and hazards regarding the decision of whether to testify, to discuss the strategic benefits involved, and to inform the defendant that this decision is ultimately the defendant's to make. Indeed, "[although] defense counsel serves as an advocate for [his or her] client, it is *the client* who is the master of his or her own defense." (Emphasis added; internal quotation marks omitted.) *State* v. *Ayala*, 324 Conn. 571, 601, 153 A.3d 588 (2017).

The defendant nevertheless contends that our holding in *State* v. *Gore*, supra, 288 Conn. 770, requires that a criminal defendant, himself, inform the trial court of his decision to waive his right to testify. Specifically, the defendant argues that, because we held in *Gore* that the right to a jury trial is among "[t]he fundamental

rights" that "a criminal defendant personally must waive"; id., 778–79; see also id., 779 n.9; a defendant is required to assert on the record, himself, the waiver of all personal constitutional rights, including his right to testify. Although we agree with the defendant insofar as we recognize that the decision to waive the right to testify must be made personally by a criminal defendant; see *State* v. *Gore*, supra, 779 n.9; it does not follow that the constitution therefore mandates that a trial court obtain an on-the-record waiver of this particular right directly from the defendant, himself.

In *Gore*, following our conclusion that the right to a jury trial is a personal constitutional right, we addressed the form that the waiver of that right must take. See id., 781. Specifically, we explained: "[W]e must decide what is constitutionally required to demonstrate that the defendant, himself, knowingly, intelligently and voluntarily waived a jury trial. . . . [W]e must determine whether the record must contain some affirmative indication from the defendant personally that he or she is waiving the right to a jury trial, or, alternatively, *whether counsel's expression of the waiver on the defendant's behalf, combined with the defendant's silence while counsel waives the right to a jury trial*, may constitute a knowing, intelligent and voluntary waiver." (Emphasis added.) Id., 777. Accordingly, although we ultimately concluded that the waiver of the right to a jury trial required that "the record . . . contain some affirmative indication from the defendant personally that he or she is waiving the right"; id.; we nevertheless confirmed that, for certain other personal constitutional rights, waiver can be accomplished through defense counsel's in-court representation that a defendant has chosen to waive the right, combined with the defendant's coincident silence. See id. At the time *Gore* was decided, we had already concluded that the waiver of the right to self-representation and the right against self-incrimination—both personal constitutional rights—could be effectuated in the absence of an affirmative, on-the-record indication from a defendant. See, e.g., *State* v. *Pires*, supra, 310 Conn. 246–49 (right to self-representation); *State* v. *Castonguay*, supra, 218 Conn. 491–92 n.2 (right against self-incrimination). Nothing in *Gore* suggested a one-size-fits-all requirement applicable to all personal constitutional rights. Thus, our holding in this case that the constitution does not require a defendant, himself, to waive his right to testify on the record is not inconsistent with our holding in *Gore* that the waiver of certain personal constitutional rights may be expressed by defense counsel on the defendant's behalf. See *State* v. *Gore*, supra, 288 Conn. 777.

Moreover, a number of courts that require an on-the-record, affirmative indication from a defendant, himself, to effectuate a waiver of the right to a jury trial do not require the same to demonstrate a waiver of the right to testify. Compare *State* v. *Upton*, 658 So. 2d 86,

88 (Fla. 1995) (concluding that, because "there was no affirmative showing on the record" that defendant personally waived his right to jury trial, state could not prove waiver was knowingly, intelligently and voluntarily made), with *Torres-Arboledo* v. *State*, 524 So. 2d 403, 410–11 (Fla.) (deciding that right to testify "does not fall within the category of fundamental rights [that] must be waived on the record by the defendant himself"), cert. denied, 488 U.S. 901, 109 S. Ct. 250, 102 L. Ed. 2d 239 (1988). Compare *People* v. *Cook*, 285 Mich. App. 420, 422–23, 776 N.W.2d 164 (2009) (noting that defendant's waiver of right to jury trial did not comply with statute that required trial court to advise defendant in open court of right to trial by jury before defendant can be said to validly waive right), with *People* v. *Simmons*, 140 Mich. App. 681, 684, 364 N.W.2d 783 ("declin[ing] to require an on-the-record waiver of defendant's right to testify"), appeal denied, 422 Mich. 963 (1985). Compare *Jones* v. *Commonwealth*, 24 Va. App. 636, 639, 484 S.E.2d 618 (1997) ("[t]o waive trial by jury, the [defendant] must give express and intelligent consent . . . and that consent . . . must be entered of record" (citation omitted)), with *Vay* v. *Commonwealth*, 67 Va. App. 236, 260, 795 S.E.2d 495 (2017) (determining that defense counsel's in-court representation that defendant would not testify, coupled with defendant's silence while counsel made this representation, was sufficient to constitute waiver of defendant's right to testify). Compare *State* v. *Stegall*, 124 Wn. 2d 719, 724–25, 881 P.2d 979 (1994) (requiring defendant's personal expression of waiver of right to twelve person jury), with *State* v. *Thomas*, supra, 128 Wn. 2d 559 (concluding that defendant's on-the-record indication that he has waived his right to testify is not required for valid waiver of that right).

In this case, the record indicates that the defendant had "extensive conversations" with his counsel regarding his decision whether to testify. Before the state rested its case, defense counsel spoke with the defendant again regarding his decision whether to testify, giving the defendant an additional opportunity to exercise his right after viewing and hearing all of the state's evidence. Furthermore, the defendant was present in court when defense counsel informed the trial judge that the defendant would not testify, and the defendant did not express any disagreement or concern with counsel's representation, much less any desire to the contrary. The defendant was also present when the jury returned and defense counsel indicated that the defense would "rest on the state's case," and the defendant again remained silent. As we have explained, in the absence of evidence to the contrary, we presume, for purposes of a constitutional challenge, that defense counsel provided the defendant with the information necessary to make an informed decision regarding whether to testify. *State* v. *Castonguay*, supra, 218 Conn. 492 n.2. The record

in this case is devoid of any indication that the defendant's silence was the product of anything other than a knowing, intelligent and voluntary waiver. Accordingly, we conclude that defense counsel's in-court representation that the defendant waived his right to testify, together with the defendant's coincident silence, was sufficient to satisfy the constitutional requirement for a valid waiver of the defendant's right to testify. The defendant's unpreserved constitutional claim therefore fails *Golding*'s third prong.

B

Having concluded that the constitution does not require a defendant, himself, to assert affirmatively his waiver of the right to testify on the record, we next address the defendant's request that we exercise our supervisory authority to require that a trial court canvass a defendant prior to the waiver of his right to testify.[7] See, e.g., *State* v. *Gore*, supra, 288 Conn. 786–87 (exercising supervisory authority to require prospectively that trial courts canvass criminal defendants to ensure valid waiver of right to jury trial).

We begin with the relevant legal principles that guide our analysis. "It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice." (Internal quotation marks omitted.) *State* v. *Rose*, 305 Conn. 594, 607, 46 A.3d 146 (2012). "Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process. . . . The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, [although] not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Lockhart*, 298 Conn. 537, 576, 4 A.3d 1176 (2010).

Consistent with our decision in *State* v. *Paradise*, supra, 213 Conn. 404–405, we decline to exercise our supervisory authority to create a per se rule requiring trial courts to canvass criminal defendants in all cases because there may be circumstances under which a canvass is inadvisable. See, e.g., *United States* v. *Martinez*, supra, 883 F.2d 760. For example, by advising a defendant of his right to testify, a trial court may inadvertently influence the defendant to waive his "more fragile right" not to testify. *Siciliano* v. *Vose*, 834 F.2d 29, 30 (1st Cir. 1987); see, e.g., *United States* v. *Bernloehr*, 833 F.2d 749, 752 n.3 (8th Cir. 1987) (stating that per se canvass requirement presents "a danger of improper comment on or judicial interference with the defendant's right not to testify"). A canvass could, in some instances, "frustrate a thoughtfully considered

decision by the defendant and counsel who are designing trial strategy"; *State* v. *Albright*, 96 Wis. 2d 122, 134, 291 N.W.2d 487, cert. denied, 449 U.S. 957, 101 S. Ct. 367, 66 L. Ed. 2d 223 (1980); as there is a risk that the defendant may interpret the canvass as an implicit recommendation by the trial judge that the defendant should testify. In situations in which defense counsel believes that a canvass would encourage the defendant to testify after extensive conversations have led the defendant to a contrary decision—thereby upsetting carefully crafted trial strategy—a per se canvass requirement could, indeed, have deleterious consequences. See, e.g., *United States* v. *Pennycooke*, supra, 65 F.3d 11 ("A colloquy on the right to testify [in certain circumstances] . . . inadvertently might cause the defendant to think that the [trial] court believes the defense has been insufficient. This belief in turn might prompt the defendant to abandon an appropriate defense strategy without good reason." (Citations omitted.)).

Nevertheless, we recognize that, in the majority of cases, a canvass of the defendant is the best practice. Often, "the best means of demonstrating the defendant's state of mind are his own declarations on the record." (Internal quotation marks omitted.) *People* v. *Curtis*, 681 P.2d 504, 515 (Colo. 1984). Furthermore, a canvass facilitates any appellate review or collateral challenge by placing the defendant's waiver on the record. See, e.g., *Boyd* v. *United States*, supra, 586 A.2d 675 (noting that colloquy allows court "[to determine] whether there is an intelligent and competent waiver by the [defendant]" (internal quotation marks omitted)); *State* v. *Walen*, 563 N.W.2d 742, 751–52 (Minn. 1997) ("placement on the record of a defendant's waiver of his right to testify often will save both the court and defense counsel considerable time at any postconviction proceeding").

Recognizing the benefits of a canvass in the context of the right to testify, while also acknowledging that a canvass may, in some circumstances, be inadvisable, we have chosen to craft a rule that adequately balances these two competing considerations. Accordingly, we take this opportunity to exercise our supervisory authority prospectively to require a trial court, when presiding over a criminal trial, to either canvass the defendant prior to his waiver of his right to testify or, alternatively, to inquire of defense counsel directly to determine whether counsel has adequately advised the defendant regarding the waiver of his right to testify. This latter option—a judicial inquiry of defense counsel—shall be used, however, only when defense counsel advises the trial court that counsel believes that a direct canvass carries the risk of inadvertently interfering with a decision made by the defendant after extensive conversations with counsel regarding trial strategy.

Although we do not prescribe the exact form that this

canvass of a criminal defendant or inquiry of defense counsel should take, both inquiries must be sufficient to satisfy the trial court, at minimum, that (1) defense counsel informed the defendant that the defendant has the right to testify, as well as the right not to testify, and should the defendant choose not to testify, the fact finder may not draw any adverse inferences from the defendant's choice not to testify, (2) defense counsel explained to the defendant that the right to testify belongs to the defendant alone, and no one, including defense counsel, can prevent the defendant from testifying, (3) the defendant has consulted with counsel in making the decision not to testify, and counsel has discussed with the defendant the advantages and disadvantages of testifying, (4) the defendant has had enough time to discuss with counsel the right to testify and the strategic decision not to testify, and the defendant has understood the information counsel has provided, and (5) the defendant has personally waived the right to testify knowingly, intelligently and voluntarily. Cf. *Momon* v. *State*, 18 S.W.3d 152, 162 (Tenn. 1999) (requiring that, in every trial in which defendant does not testify, defense counsel canvass defendant outside presence of jury to inquire of defendant whether defendant has made knowing, intelligent and voluntary waiver of right to testify to ensure that defense counsel does not "unilaterally deprive . . . [the defendant] of the fundamental right to testify").

This approach strikes the proper balance between the competing concerns of ensuring that criminal defendants understand their fundamental right to testify on their own behalf, on the one hand, and minimizing the danger, in some circumstances, that judicial intervention may inadvertently pressure defendants into testifying, on the other. It seeks to preserve a defendant's fundamental right to testify, while also protecting the relationship and confidences between a defendant and his counsel. This approach also facilitates appellate review by placing, on the record, the circumstances of a defendant's waiver of his right to testify. Cf. id. (describing benefits of approach adopted by court, which will require defense counsel to conduct on-the-record canvass of defendant prior to valid waiver of defendant's right to testify).

## II

The defendant's final claim on appeal is that the prosecutor committed improprieties on several occasions during her direct examination of S, in violation of the defendant's right to a fair trial. Specifically, the defendant contends that the prosecutor's excessive use of leading questions in at least "three separate contexts"[8] throughout the course of her direct examination of S assumed facts not in evidence and stood to bolster S's testimony. The state, however, contends that, because defense counsel did not object to the prosecutor's use

of leading questions at trial, the defendant's claims are unpreserved evidentiary issues, rather than constitutional ones, and are therefore unreviewable. We agree with the state.

Defense counsel did not object to the prosecutor's use of leading questions at trial, and the defendant now argues on appeal that his claim should nevertheless be reviewed under *State* v. *Williams*, 204 Conn. 523, 529 A.2d 653 (1987), and *State* v. *Warholic*, 278 Conn. 354, 897 A.2d 569 (2006). Although we have held that unpreserved claims of prosecutorial impropriety are to be reviewed under the factors set forth in *State* v. *Williams*, supra, 540; see, e.g., *State* v. *Spencer*, 275 Conn. 171, 178, 881 A.2d 209 (2005); that rule does not apply to "unpreserved evidentiary claims masquerading as constitutional claims . . . ." *State* v. *Golding*, supra, 213 Conn. 241.

Although the defendant argues that the prosecutor's use of leading questions throughout the course of her direct examination of S constituted prosecutorial impropriety, our review of the record reveals that his claims are unreviewable because they raise nothing more than unpreserved evidentiary issues.[9] As the state notes, "the defendant does not cite a single fact elicited by leading questions that could not also have been elicited by nonleading questions, had [defense counsel] raised any objection" during the prosecutor's direct examination of S. Thus, the defendant's claims, at bottom, take issue with the form of the prosecutor's questions and not the information elicited. See, e.g., *State* v. *Jose G.*, 290 Conn. 331, 343, 963 A.2d 42 (2009) ("An objection that a question is leading is a *procedural* objection aimed at the *manner* in which a question is being asked, not at the evidence sought to be elicited. . . . In other words, it is not the propriety of the evidence being questioned, but, rather, the manner in which it is being obtained." (Citation omitted; emphasis altered.)). Accordingly, we conclude that the defendant's challenges, on appeal, to the prosecutor's use of leading questions during her direct examination of S are purely evidentiary in nature and are unpreserved. The claim is not one of prosecutorial impropriety, and, therefore, it is not reviewable under *Williams* or *Warholic*.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] The defendant refers to the right to testify afforded by the federal and state constitutions in general only. Because the defendant has not provided a separate analysis of the right to testify under our state constitution, and he has not claimed that the state provisions provide greater protection than their federal counterparts, for purposes of this appeal, we treat the right to testify arising from the state and federal constitutions as coextensive. See, e.g., *State* v. *Gore*, 288 Conn. 770, 776 n.7, 955 A.2d 1 (2008) (applying this analysis to right to jury trial); *State* v. *Velasco*, 253 Conn. 210, 237 n.19, 751

A.2d 800 (2000) (applying this analysis to right to impartial jury).

[3] The distinction between personal constitutional rights and tactical rights is largely premised on promoting expeditious litigation. "Tactical decisions appropriately may be waived by counsel acting alone because [t]he adversary process could not function effectively if every tactical decision required client approval. . . . [G]iving the attorney control of trial management matters is a practical necessity. . . . Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend . . . [on] tactical considerations of the moment and the larger strategic plan for the trial. . . . To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical." (Citation omitted; internal quotation marks omitted.) *State* v. *Gore*, supra, 288 Conn. 779 n.10.

[4] Indeed, there are indications in our decision in *Paradise* that the court recognized that the right to testify is a personal constitutional right. In support of our determination that federal law does not require that a trial judge canvass a criminal defendant to ensure that he validly waived his right to testify, we cited cases recognizing that, notwithstanding the conclusion that a trial court is not required to canvass a defendant regarding the waiver of his right to testify, only a defendant can waive this right. See *State* v. *Paradise*, supra, 213 Conn. 405; see also, e.g., *Siciliano* v. *Vose*, 834 F.2d 29, 30 (1st Cir. 1987) (declining to require trial court to follow specific procedure explicitly canvassing defendant on right to testify, as trial court "could inappropriately influence *the defendant* to waive *his* constitutional right not to testify" (emphasis altered)); *United States* v. *Bernloehr*, 833 F.2d 749, 751 (8th Cir. 1987) ("[b]ecause the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right"); *United States* v. *Janoe*, 720 F.2d 1156, 1161 n.10 (10th Cir. 1983) ("[t]he decisions which are to be made *by the accused* after full consultation with counsel are . . . [1] what pleas to enter . . . [2] whether to waive jury trial . . . and . . . [3] *whether to testify in his or her own behalf*" (emphasis altered; internal quotation marks omitted)), cert. denied, 465 U.S. 1036, 104 S. Ct. 1310, 79 L. Ed. 2d 707 (1984).

[5] The defendant argues that, in *Paradise*, we implicitly adopted the " 'demand approach,' " as described in *Boyd* v. *United States*, supra, 586 A.2d 676. Under this approach, "a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right." Id. Contrary to the defendant's contention, we have never adopted the waiver approaches described in *Boyd*, and we decline to do so today. Nevertheless, to the extent that this court's decision in *Paradise* left open questions regarding the procedural requirements necessary for a defendant to waive his right to testify, we now clarify those requirements.

[6] Other courts have similarly placed the onus on defense counsel, not the trial judge, to ensure that a defendant has been adequately advised of his right to testify. See, e.g., *Brown* v. *Artuz*, supra, 124 F.3d 79; *United States* v. *Teague*, supra, 953 F.2d 1533; *United States* v. *Campione*, 942 F.2d 429, 439 (7th Cir. 1991); *DeLuca* v. *Lord*, 858 F. Supp. 1330, 1355–60 (S.D.N.Y. 1994), aff'd, 77 F.3d 578 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83, 136 L. Ed. 2d 40 (1996); *State* v. *Johnson*, 298 Neb. 491, 506, 904 N.W.2d 714 (2017).

[7] Alternatively, the defendant requests that, "in light of the exceptional circumstances of this case," namely, that the defendant is a non-English speaker and relied exclusively on the assistance of an interpreter throughout trial, we exercise our supervisory authority to reverse the defendant's conviction. Specifically, the defendant argues that "the fast pace of proceedings and the delay between the in-court colloquies and interpretation for the defendant created a risk that the defendant did not have time to raise an objection," and, thus, "the absence of a canvass [regarding the defendant's right to testify] resulted in exceptional circumstances necessitating reversal." We are unpersuaded. The defendant does not allege that his use of an interpreter prevented him from understanding his right to testify or that he would have testified if he "ha[d] time to raise an objection" to defense counsel's expression of the defendant's waiver. Further, he does not cite any cases, and we have found none, in which this court exercised its supervisory authority to reverse a defendant's conviction in a similar circumstance. We therefore decline the defendant's invitation to exercise our supervisory authority to reverse his conviction on that basis.

[8] These "three separate contexts" involved questions regarding the timing of S's observation of blood after the alleged assault, the accuracy of the photographs of S's injuries, and the substance of S's prior statements.

[9] We do not suggest that a prosecutor's use of leading questions can never rise to the level of prosecutorial impropriety. For instance, a prosecutor may not pose a question, in any form, "that implies the existence of a factual predicate when the prosecutor knows that no such factual basis exists." *State* v. *Salamon*, 287 Conn. 509, 564, 949 A.2d 1092 (2008). Nothing of the kind occurred in the present case. Furthermore, even if reviewed through the lens of a claim of prosecutorial impropriety, the defendant's claim would fail on the merits because the "the [trial] court has discretion to allow [leading questions on direct examination] in certain circumstances." Id., 559, citing Conn. Code Evid. § 6-8 (b). The commentary to § 6-8 (b) (3) of the Connecticut Code of Evidence explains that "the court may allow the calling party to put leading questions . . . to a witness who has trouble communicating." (Citations omitted.) Conn. Code Evid. § 6-8 (b) (3), commentary. Our review of the record in this case reveals that S responded to the prosecutor's open-ended questions with cursory, often one word answers, and she was not descriptive throughout her direct examination. Thus, our review leads us to believe that the prosecutor's use of leading questions was necessary to develop S's testimony, which very well may explain why defense counsel did not raise an objection. Accordingly, we conclude that the prosecutor's use of leading questions in this case was not improper.